May it please the Court, Your Honors, I'm Robert Fisher, representing Plaintiff Appellant Todd Michalec. This is a Social Security matter in which the ALJ went through the sequential evaluation process, and at Step 4 found Mr. Michalec had performed his past relevant work as a correctional treatment specialist. In coming to this conclusion, the ALJ made two errors that warrant a reverse and remand of this case. First, the ALJ's credibility determination is patently wrong, and second, the ALJ's residual functional capacity assessment is not supported by substantial evidence. The ALJ's credibility determination is patently wrong for various reasons. First, the ALJ cannot accurately assess Mr. Michalec's credibility pertaining to his complaints of shooting pain down his neck and arms without addressing the July 2009 MRI of his cervical spine. This MRI is particularly important because it is prior to his date last insured of December 31, 2010. It shows multiple cervical disc protrusions with moderate nerve compression at C7 and nerve abutment at C4, and that can be found in Administrative Record page 385, Your Honors. In fact, according to the exact words of the ALJ's decision, the evidence does not show that the claimant has nerve compression with radiculopathy. However, this MRI obviously shows he has moderate C7 nerve compression, and there is no mention whatsoever of this MRI in the ALJ's decision. Furthermore, on examination he was shown to have radiculopathy via a positive Sperling's test bilaterally. Mr. Fisher, if I recall, the government is pointing out that that issue was not raised in the District Court. Yes, Your Honor. In fact, in Arnett v. Astru, they kind of deal with these issues, various issues, a combination of which affect them. Why don't we start with what was it raised in the District Court? No, the MRI itself was not raised. What was raised was that the ALJ failed to adequately consider all factors in deciding whether he could perform work. And our assessment is that this would significantly affect his ability to perform his work as a correctional treatment specialist. Okay, so your theory on waiver is that that blanket assertion, the ALJ made a mistake, Yes, Your Honor. is enough to preserve any mistakes. Well, this is only one of our arguments, Your Honor, but our position is the combination of issues as a whole preclude his ability to do this work. All right. So with this issue regarding the radiculopathy, similar to as in Goins v. Colvin, the ALJ did not use the report of the results of the MRI as an aid in evaluating the plaintiff's testimony, and therefore the credibility determination is patently wrong. But there are two other issues regarding the credibility determination, Your Honor. In coming to this credibility assessment, the ALJ also used selectively highlighted evidence. The ALJ mentions orthopedic specialist Dr. Brent Johnson's name one time, stating he is treating Mr. Mihalik for osteoarthritis. However, she fails to address his opinion stating he needs his bilateral shoulder replacement surgery. Furthermore, the ALJ fails to acknowledge the significant examination finding showing complete loss of the glenohumeral joint space with bony crepitus upon range of motion of his shoulders. So quite literally, his shoulders are making a grating and cracking noise throughout range of motion. Furthermore, the ALJ selectively highlights Mr. Mihalik's statements regarding his activities of daily living. In the way the ALJ characterizes Mr. Mihalik's ADL reports, you would think he has normally functioning shoulders that can perform any type of sedentary work. However, a full review of this evidence shows this is not the case. First, the ALJ concluded he is able to sit while watching television and using the The ALJ stated he was able to use his automobile frequently. But upon further examination of his response, he includes However, it is very difficult and painful for me to do most driving and steering motions. Wife always drives when I don't have to drive alone. The ALJ also stated Mr. Mihalik was able to attend to his personal needs but failed to discuss his comments including using the toilet, reaching for toilet paper to flush the toilet, and putting toilet paper to the side is painful. To corroborate this assertion, at the hearing Mr. Mihalik stated I don't want to get nasty, but wiping after you go to the bathroom, just putting on socks, my wife has to do those types of things for me. Mr. Mihalik further explained he has a difficult time performing most basic activities such as brushing his teeth because the pain shoots down his arms and into his wrists and hands. The final reason the ALJ's credibility determination is patently wrong is because she fails to address relevant evidence that precludes this court from adequately reviewing her analysis. Prior to his hearing, Mr. Mihalik filed an SSA statement of claimant or other person to explain the issue of personal training in his record. In this statement, Mr. Mihalik explained that since he had worked from the age of 15 up until his time of disability, he was embarrassed to list himself as unemployed on forms, including physicians. Prior to the time of his disability, he had informally helped friends weightlift, so he told people he was a personal trainer, and I quote, solely to hide a sense of shame I felt because I could not work. Without an adequate explanation Is it your position that the ALJ was required to accept that explanation? Our position is that the ALJ is required to draw a logical bridge between the evidence to their conclusion, and if they're going to use personal trainer as a way to discredit him, if they're going to point out a good paragraph in the decision highlighting these negative issues, they should The explanation is just absurd. I've never seen somebody who was claiming to work as a personal trainer claiming disability benefits. Yeah, that's reasonable, Your Honor. One of the issues is that he's also depressed. He's been prescribed Welbutrin ever since 2005 on. He was a juvenile detention counselor between 1990 and 2000. Then he worked at GNC for a short amount of time, and then he worked at Vitamins Plus. He had to stop working at Vitamins Plus to do the stocking of the shelves with the shoulders, and when the non-attorney representative further questioned him about it, he said it was a shoulder pain. He just couldn't put the stuff on the shelves anymore. So I guess a person who's depressed versus a person who's not depressed may cope differently with these types of issues. And second, the ALJ's residual functional capacity assessment is not supported by substantial evidence, which is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The commissioner will tell you any of these errors are harmless because we have state physician Dr. Smith, who reviewed the medical file and came to the conclusion Mr. Mihalik can perform sedentary work with some limitations. However, this assertion is problematic twofold. One, Dr. Smith did not review orthopedic specialist Dr. Johnson's treatment notes stating he needs bilateral shoulder replacement surgery. And two, the ALJ's RFC assessment regarding the shoulder limitations is far less restrictive than that set out by Dr. Smith himself. It takes some very close reading of the terminology, but the ALJ concludes he can occasionally reach two or above his shoulder level bilaterally. Occasionally is defined in the regulations as up to one-third of the workday. However, Dr. Smith concluded Mr. Mihalik is limited to reaching in all directions to just one-third of the workday. So just to clarify, Dr. Smith was limiting any type of reaching, whereas the ALJ only limited his reaching at shoulder level or above. This has serious implications for jobs that include clerical tasks, such as opening drawers, filing paperwork, or even grabbing a pen. As already mentioned, Dr. Smith concluded this more restricted RFC even without mentioning Dr. Johnson's statement that he needed bilateral shoulder replacement surgery. Ironically, the ALJ states this RFC grants a claimant every benefit of the doubt, but it is far less restrictive than the assessment of the claimant. In making a proper RFC determination, an ALJ must consider all the relevant evidence in the record. She failed to do so in this case, and Mr. Mihalik asked his court to reverse and remand for further analysis. Was the shoulder surgery recommendation brought to the District Court's attention? I believe that the treatment notes were highlighted. I do not know if the exact wording, Your Honor, was involved. Was the argument made? About Dr. Brent Johnson, yes. But the actual shoulder, the words shoulder surgery were not mentioned specifically, to be clear. Thank you, Mr. Fisher. Ms. Siegel. Good morning, Your Honors. My name is Catherine Siegel. I represent the Commissioner of Social Security in this case. I'd like to start out with the sedentary work capacity that the ALJ assessed. The ALJ here found a reduced range of sedentary capacity based on the only opinion that was rendered regarding the claimant's condition during the relevant insured period here. That's an important distinction because the claimant's insured status expired in December 2010, and the court has said that evidence showing a disability must be from the period at issue, must relate to the claimant's condition during the period at issue, and here that ends in December 2010. There aren't any treating physicians who place restrictions on the claimant's capacity during the relevant insured period. The only RFC we have is from Dr. Smith, and the ALJ adopted all the restrictions that Dr. Smith set forth. Dr. Smith gave a good explanation of what he considered when he was assessing those restrictions, and one of the things he considered was the MRI findings from July of 2009. The claimant says that the ALJ did not specifically address that evidence, but by adopting the restrictions from Dr. Smith, the ALJ here in essence accommodated any restrictions that would have been caused by the condition that was objectively noted in that MRI finding. Counsel, is there any issue of supplemental security income in this case? No, the claimant did not apply for supplemental security income. This is only a DIB case, and DIB has very strict rules about insured status and qualifying for disability during the insured period. As you noted, the claimant did waive most of the issues that were raised in the appellate brief by not raising them in the district court, but even if he had raised them, they don't have merit. The credibility issue in particular is quite compelling in this case. As you noted, the claimant told his doctors throughout 2008 and 2009 on multiple occasions that he was working as a fitness trainer at Fitness America. It was very specific statements to his doctors about working as a fitness trainer. In fact, when the claimant was talking to Dr. Brent Johnson about shoulder surgery, he opted not to have shoulder surgery because the doctor suggested that he would have to stop weight lifting if he underwent shoulder surgery. The ALJ questioned the claimant at length about this to clarify what his statements were to his doctors. So this wasn't something that she just popped into the decision without grappling with this evidence. Because on the one hand, he told his doctors that he was working at Fitness America as a personal trainer. On the other hand, he claimed at the hearing that he did not work as a personal trainer, had never worked as a personal trainer, and didn't even know what a personal trainer did. The ALJ weighed these two very conflicting statements and it understandably colored her impression of whether this claimant was telling the truth in general about his disability. And that was a reasonable thing to do. The ALJ here questioned the claimant about why he would claim that he was doing such a rigorous job. If he was going to tell his doctors that he was working because he was embarrassed to be unemployed, why didn't he suggest a job that didn't require so much rigorous activity? Such as someone who was sitting at a desk and not moving their arms around. But the claimant said that he had a history of being a weightlifter and that it seemed plausible that he could have worked as a personal trainer. He also said that a personal trainer doesn't actually do much, that he just stands with a notepad while the client does the lifting and work. And when the ALJ challenged him about that, about spotting a client with weights, he said that he didn't know anything about what a personal trainer actually did because he'd never done it. Now ironically, in his brief, the claimant says that the ALJ erred by considering another statement that the claimant made to the agency about being an informal personal trainer with his friends that he made early on to the agency. And this rather seems to confirm the fact that he's lying about the personal training job in one way or another. And would fit right with the credibility finding that the ALJ found. Now the ALJ didn't just rely on that one particular thing, that one big lie from the claimant in his brief. He also considered things like objective findings, which during the relevant and short period are normal. Normal neurological findings and the doctors who treated the claimant didn't find any basis for restricting his capacity in any way. And that's compelling evidence of not being disabled. And it conflicts with what the claimant was claiming about being disabled by his impairments. The other thing that she considered, she contrasted the different reports about his activities and on the one hand, when he first applied for benefits and filled out agency reports, he talked about doing activities with some claim, but he was still able to do the activities. Whereas at the time of the hearing, which is about 18 months after his insurance status expired, he was at a point where he was much more restricted. So she weighed that evidence and said that the evidence that was more contemporaneous to the period at issue was more compelling evidence that he was not disabled. The other thing that the ALJ considered was that none of the doctors recorded any side effects from his medications. And of course, the most important was not being limited by any of his doctors during the relevant period. Any further questions? Thank you, Ms. Siegel. Mr. Fisher. So the defendant said the ALJ adopted all restrictions of Dr. Smith and her RFC. It took me multiple readings to really understand the comparison of the two. So if I could draw your attention to Administrative Record, page 531. Here Dr. Smith notes that he is up to one-third of the date reaching in all directions, not at shoulder level or above, which as I mentioned before, makes a huge difference if you're trying to do a clerical task sitting down. Additionally, all of Mr. Mihalik's arguments boil down in one way or another that the ALJ failed to consider the impact of all of his impairments taken together. And given that waiver is a flexible doctrine, he hopes that it would be applied in this case in a way to prevent injustice and give Mr. Mihalik a fresh look at his case. And finally, the judge mentions that the objective findings do not support his complaints of disability. However, some notes from Dr. Brett Johnson, he states he was concerned about such severe osteoarthritis at such a young age, and he feared neck involvement, so he ordered that C-spine MRI in July of 2009 prior to the date last insured. So unless you honors have any further questions, we would ask you to reverse and remand the case.